## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIGHTCAP-STEELE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KIDSPEACE HOSPITAL, INC., | : | |
| et al | : | |
| Defendants. | : | NO. 05-02578 |

### MEMORANDUM AND ORDER

Pratter, Gene E.K., J.                                                    April 27, 2006

Plaintiff, Kristine Lightcap-Steele was employed as an aquatics instructor with

Defendant, KidsPeace Hospital Inc. ("KidsPeace"), a non-profit Pennsylvania corporation, in

Bethlehem, Pennsylvania.  Amended Complaint ¶ 4-5 (¶ 4-5).  Defendants Daniel McKinney,

Richard Taglang, Richard Zelko and Lisa Garbacik were employed as KidsPeace management

and staff.  ¶ 6-9.  On June 1, 2005, Ms. Lightcap-Steele filed her Complaint in which she alleges

KidsPeace's violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*.

("ADA")(Count I), retaliation under the ADA (Count II), violation of Title VII of the Civil

Rights Act of 1964 and 1991, 42 U.S.C. § 2000(e) *et seq*. for hostile environment ("Title

VII")(Count III), retaliation under Title VII (Count IV), negligence under Title VII (Count V),

and violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1) (Count

VI).  Ms. Lightcap-Steele's Complaint also alleges that KidsPeace and the individual Defendants

violated the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. (Counts VII

and VIII, respectively) and alleges a cause of action against the individual Defendants for

intentional infliction of emotional distress (Count IX).  Ms. Lightcap-Steele filed an Amended

Complaint on August 8, 2005, adding a retaliation charge under the PHRA (Count X).  Prior to

filing her Complaint, Plaintiff received a notice of right-to-sue letter from the EEOC dated

March 16, 2005.  ¶ 3.

Now before the Court is the defendants' Motion to Dismiss the Amended Complaint to

which Ms. Lightcap has responded.  As an initial matter, at the oral argument on December 8,

2005, Plaintiff agreed to dismiss Counts III, IV, V, VI and IX in their entirety, and Counts VII,

VIII, and X so much as "those claims relate to sexual discrimination [and] sexual harassment,

but not as to ADA-based claims."  Transcript of Oral Argument, December 8, 2005, at 5 (Tr. at

5).  For the reasons discussed below, the Court concludes as to the remaining Counts that Ms.

Lightcap-Steele has succeeded in stating a claim under Counts I, II, VII, VIII, IX and X, with the

exception of Count IX as to Ms. Garbacik.  Concerning Count VIII as to Ms. Garbacik, the Court

has determined that Ms. Lightcap-Steele failed to exhaust her administrative remedies and that

Count will be dismissed as to her.

## I.     FACTUAL BACKGROUND

The following recitation of the facts is based on Ms. Lightcap-Steele's Amended

Complaint, and all paragraph references correspond to the Amended Complaint.

Ms. Lightcap-Steele was hired by KidsPeace on December 3, 1993, as an aquatics

instructor.  ¶ 32.  Ms. Lightcap-Steele suffered a non-work related accident on January 9, 2002,

from which she alleges that she sustained a serious permanent medical condition.  ¶ 35.  As a

result of this condition, Ms. Lightcap-Steele requested and was granted accommodations,

consistent with her physician's recommendations, which modified her job duties to remove the requirement of lifting, performing restraints, and performing water rescues.  ¶ 36.

Beginning on March 10, 2003 Ms. Lightcap-Steele was on maternity leave.  ¶ 39.  After the birth of her child, she had complications from the delivery which she alleges resulted in part from her disabling condition.  ¶ 40.  Ms. Lightcap-Steele remained on leave until August 11, 2003 when she was cleared to return to work.  ¶ 40.  At that time, she requested the same accommodations as had been previously in place for her due to her alleged continuing disabling condition.  ¶ 41.  However, her supervisor, Daniel McKinney, allegedly refused to extend these accommodations on August 22, 2003, stating that he, his supervisor, Mr. Taglang, and the "Human Resource Department" felt Ms. Lightcap-Steele was abusing the system and that they were unhappy with her prior leave.  ¶ 42.  Ms. Lightcap-Steele alleges that the reference to the "Human Resource Department" referred to Ms. Garbacik, the manager of human resources.  ¶ 9, 43.

Ms. Lightcap-Steele further alleges that Mr. McKinney placed this refusal in writing on August 25, 2003 and that he therein stated that lifting and water rescues are essential functions of the job of an aquatics instructor.  ¶ 45-46.  However, Ms. Lightcap-Steele contends that the same accommodations as she was then seeking were in place previously for three months between January and March of 2003.  ¶ 46.  She then asserts that Mr. McKinney forbade her from returning to work with accommodation, and that he stated that Ms. Lightcap-Steele could not return unless she was cleared for full duty.  ¶ 48.  As a result, Ms. Lightcap-Steele alleges that she was required to take further leave.  ¶ 49.  Ms. Lightcap-Steele asserts that on August 26, 2003, she was advised by letter that she would be terminated as of September 11, 2003 if she

remained on leave.  ¶ 50.  Because she wanted to retain her job, but knew that she would not be permitted by Mr. McKinney  to return to work with accommodation, Ms. Lightcap-Steele alleges she was forced to acquire a release to work without restriction from her physician against his medical advice.  ¶ 51.  According to Ms. Lightcap-Steele, Mr. McKinney was still not satisfied, and required Ms. Lightcap-Steele to undergo a fitness for work evaluation with Health Works.  ¶ 52.  That examination consisted only of  a "hands off" interview, clearing Ms. Lightcap-Steele for work based solely on her physician's clearance.  ¶ 53.  Mr. McKinney then permitted Ms. Lightcap-Steele to return to work on September 8, 2003.  ¶ 54.  Thereafter, Mr. McKinney allegedly engaged in a pattern of hostile and retaliatory conduct against Ms. Lightcap-Steele because of her assertion of her request for accommodations.  ¶ 55.

On January 5, 2004, Mr. McKinney gave Ms. Lightcap-Steele a negative evaluation (allegedly the first such negative report Ms. Lightcap-Steele had received in ten years of service), based upon a "new" job description that was not yet written, and not pursuant to the job description Ms. Lightcap-Steele actually worked under during 2003.  ¶ 56.  She alleges that the new description was designed to make her ineligible for employment by including duties that Ms. Lightcap-Steele was not qualified, certified, or licensed to perform.  ¶ 57.

On January 30, 2004, Ms. Lightcap-Steele complained of all of the above to Mr. Taglang. ¶ 58.  Instead of investigating Ms. Lightcap-Steele's complaints, Mr. Taglang allegedly sharply rebuked Ms. Lightcap-Steele, accusing her of harassing and personally attacking Mr. McKinney, and told her that she was the one who created a hostile environment for herself.  ¶ 59.  On February 11, 2004, Ms. Lightcap-Steele met with Mr. Taglang's supervisor, Richard Zelko, who allegedly promised to "look into" the matter and suggested that Ms. Lightcap-Steele have one-

on-one meetings with Mr. McKinney and Mr. Taglang to try to work out the problems.  ¶¶ 60-61.  When Ms. Lightcap-Steele told Mr. Zelko that this had not worked in the past, he had no other solutions to offer.  ¶ 61.

As a result of the treatment by Mr. McKinney, Mr. Taglang, and Mr. Zelko, Ms. Lightcap-Steele filed a Charge of Discrimination with the EEOC on February 17, 2004.  ¶ 62. Ms. Lightcap-Steele was later put on administrative leave and contacted by Ms. Garbacik on numerous occasions to provide further information as to the nature and extent of her disability. ¶ 63.  Ms. Lightcap-Steele was asked to, and did provide medical reports indicating her medical condition and the required accommodations.  ¶ 64.  Then, on July 2, 2004, Ms. Lightcap-Steele was terminated by Ms. Garbacik.  ¶ 71.

## II.   LEGAL ANALYSIS

### A.    Legal Standard

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  Furthermore, an employment discrimination complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to

relief" under Fed. Rule Civ. Proc. 8(a)(2).  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).

Nevertheless, KidsPeace and the other defendants urge the Court to invoke certain procedural options to look beyond the Plaintiff's pleading.  Specifically, KidsPeace and the individually named defendants (herein collectively "KidsPeace") argue that the Court should look beyond the face of the Amended Complaint and consider other documents without converting the motion to dismiss to a motion for summary judgment.  Alternatively, KidsPeace suggests that the Court may elect to convert the Rule 12(b)(6) motion to a motion for summary judgment.  To these ends, KidsPeace attached the EEOC Administrative Record to its Motion, including materials such as medical records, job descriptions, and alleged evidence of an interactive resolution process between the parties in an effort to demonstrate that the Ms. Lightcap-Steele has failed to state a claim.

Although a district court has the discretion to convert a motion to dismiss to a motion for summary judgment,  Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992) (citations omitted), the court must provide notice of its intention to consider the motion under Rule 56 of the Federal Rules of Civil Procedure.  Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). Generally, if matters outside the pleadings are presented on a motion under Rules 12(b)(6) and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles.  Kulwicki, 969 F.2d at 1462. Here, the Court has not given such notice to the parties, declines KidsPeace's invitation to treat this motion as one for summary judgment and will proceed according to the standards for deciding a motion to dismiss.

**B.      Consideration of the Administrative Record**

As just explained, "[t]o decide a motion to dismiss, courts generally consider only the

allegations contained in the complaint, exhibits attached to the complaint and matters of public

record."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.

1993) (citations omitted).  However, a court may also consider an undisputedly authentic

document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the document, "[o]therwise, a plaintiff with a legally deficient claim could survive a

motion to dismiss simply by failing to attach a dispositive document on which it relied."

Pension Benefit, 998 F.2d at 1196.

KidsPeace argues that administrative filings before the EEOC may be considered on a

Rule 12(b)(6) motion as being  part of the public record, documents referenced in the complaint,

documents integral to the plaintiff's complaint, or undisputedly authentic documents.  But, as

Ms. Lightcap-Steele has argued, courts have defined a public record, for purposes of what

properly may be considered on a motion to dismiss, to include, by way of illustrative example,

criminal case dispositions such as convictions or mistrials, letter decisions of government

agencies and published reports of administrative bodies.  Pension Benefit Guar. Corp. v. White

Consol. Indus., 998 F.2d 1192, 1197 (3d Cir. 1993) (citing Collins v. County of Kendall, Ill., 807

F.2d 95, 99 n.6 (7th Cir. 1986); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir.

1979); Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).

Ms. Light-Steele also correctly notes that where the Third Circuit Court of Appeals has

permitted the consideration of an exhibit to a motion to dismiss, the court has generally noted

that allegations in the complaint were based on the document and/or that the complaint itself

described the document's terms.[1]  See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

In this case, KidsPeace attached a 257-page EEOC file  to its motion to dismiss, quoting Arizmendi v. Lawson, 914 F. Supp. 1157, 1161 (E.D. Pa. 1996), for the proposition that:

> In resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.

KidsPeace also cites a number of additional cases to try to persuade the Court to consider the administrative filings before the EEOC as part of the Rule 12(b)(6) motion, either as being integral to the Plaintiff's complaint or as part of the "public record."  Examined carefully, however, most of the cases cited by KidsPeace, including the Arizmendi case, involved viewing the subject record for the purpose of determining whether procedural predicates for a claim had been met (such as whether administrative remedies have been exhausted) or whether the claim was filed in a timely manner.[2]  In two of the cases cited by KidsPeace the presiding courts did

---

[1]    The Court acknowledges that Plaintiff here does specifically mention job duties and essential functions of those duties in her complaint, and that Defendants believe that the job descriptions should therefore be considered by the Court.  However, based on the Plaintiff's allegations that accommodations were granted at one point concerning these duties (¶ 36), and that the requested accommodations would not create a hardship to KidsPeace (¶ 65), the job descriptions themselves are not dispositive at this stage of the litigation where all reasonable inferences must be taken in favor of the Plaintiff.

[2]    See Arizmendi v. Lawson, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) (court examined record to determine if the plaintiff lodged an administrative complaint within the time required); Tlush v. Mfrs. Res. Ctr., 315 F. Supp. 2d 650, 654 (E.D. Pa. 2002) (court examined record where the "Defendants move[ed] to dismiss Plaintiff's ADA, ADEA and PHRA claims for failure to

consider the administrative record for substantive reasons.  In <u>EEOC v. Dessen, Moses &</u>

<u>Sheinoff</u>, No. 01-4625, 2002 U.S. Dist. LEXIS 11525, at *8 n.1 (E.D. Pa. Mar. 5, 2002), the

court considered the EEOC Charge Questionnaire and "Decision Not to File" in a motion to

dismiss to determine if the activity in question was a protected activity but without giving prior

notice to the parties of the court's intention to look beyond the complaint because it did not

prejudice the plaintiff for the court to do so.  And, in <u>Fosburg v. Lehigh University</u>, No. 98-864,

1999 U.S. Dist. LEXIS 2833 at *6, 19 (E.D. Pa. Mar. 4, 1999), the court's reference that "[t]he

administrative filings may be considered part of public record," was in the context of not only

discussing the substantive claims, but also the defense claims of plaintiff's failure to exhaust

administrative remedies.  <u>Id.</u> at *6.  Neither of these cases considered the type of in-depth review

of an EEOC file, such as is suggested by KidsPeace here for substantive purposes, as opposed to

dismissing a claim for failure to exhaust administrative remedies.  Even in <u>Fosburg</u>, when the

court acknowledged  material outside the complaint offered by the defendant, the court also

_____

exhaust administrative remedies."); <u>McCain v. Independence Chrysler-Plymouth Inc.</u>, No. 02-863, 2002 U.S. Dist. LEXIS 15149, at *3-6 (E.D. Pa. Aug. 7, 2002) (court examined record to determine if claim was time barred); <u>Fugarino v. University Servs.</u>, 123 F. Supp. 2d 838, 841 (E.D. Pa. 2000) (court examined record to determine if plaintiff had exhausted her administrative remedies); <u>Rogan v. Giant Eagle, Inc.</u>, 113 F. Supp. 2d 777, 783, 788 (W.D. Pa. 2000) (court examined record to determine exhaustion of administrative remedies and timeliness); <u>Mullen v. Topper's Salon and Health Spa, Inc.</u>, 99 F. Supp. 2d 553, 556 (E.D. Pa. 2000) (court examined record to determine if there was a  failure to exhaust administrative remedies); <u>Kuper v. Colonial Penn Ins. Co.</u>, No. 99-172, 1999 U.S. Dist. LEXIS 7179 (E.D. Pa. May 18,1999) (court considered the administrative filings to determine if there was a  failure to exhaust administrative remedies);  <u>Shannon v. City of Philadelphia</u>, No. 98-5277, 1999 U.S. Dist. LEXIS 2428 (E.D. Pa. Mar. 5, 1999)  (court considered the administrative filings to determine if there was a  failure to exhaust administrative remedies); <u>Dixon v. Philadelphia Hous. Auth.</u>, 43 F. Supp. 2d 543 (E.D. Pa. 1999),  (court considered the administrative filings to determine if there was a  failure to exhaust administrative remedies).

recognized the troublesome result that could come from weighing material in EEOC filings as evidence at the motion to dismiss stage.  Indeed, in <u>Fosburg</u>, the court observed that the defendant "seeks to pare away Plaintiff's claims before such action is procedurally appropriate." <u>Id.</u> at *13.  Furthermore, in <u>Fosburg</u>, the court's more focused discussion of material outside the complaint was related to its determination concerning plaintiff's failure to exhaust administrative remedies.  <u>Id.</u> at *24-25.

Rather than engage in the problematic task of prematurely weighing allegations in the Amended Complaint against the material in the EEOC file at the motion to dismiss stage, this Court will not focus on material extraneous to the Amended Complaint such as the EEOC file or the EEOC charge itself except for the purpose of determining whether administrative remedies were exhausted as to Ms. Garbacik.[3]  <u>Cf.</u>  <u>Cambra v. Rest. Sch.</u>, No. 04-2688, 2005 U.S. Dist. LEXIS 26231, at *15 (E.D. Pa. Nov. 2, 2005) (stating "the probative value of the [EEOC] letter is minimal in view of the fact that the parties will be required to present at trial the same evidence that was received by the EEOC.")  Therefore, the Court will address first the issue of exhaustion of administrative remedies.

### C.     Lisa Garbacik and Exhaustion of Administrative Remedies[4]

---

[3]     KidsPeace claims that after arguing that this Court should not consider facts outside the Amended Complaint, Ms. Lightcap-Steele attempts to add by way of her response to the defense motion numerous alleged facts that are not included in the Amended Complaint.  Such arguments likewise are considered only to the extent that is appropriate at this early stage of the litigation.

[4]     Defendants have termed their motion as  "pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6)."  "Because failure to exhaust is 'in the nature of statutes of limitation,' and 'does not affect the district court's subject matter jurisdiction,' this issue is best resolved under Rule 12(b)(6)."  <u>Tlush v. Mfrs. Res. Ctr.</u>, 315 F. Supp. 2d 650, 654 (E.D. Pa. 2002) (quoting <u>Anjelino v. New York Times Co.</u>, 200 F.3d 73, 87 (3d Cir. 1999).

KidsPeace argues that Ms. Lightcap-Steele failed to name Ms. Garbacik in her EEOC charge of discrimination and that there are no allegations before the EEOC that Ms. Garbacik's personal conduct contravened the law.  Accordingly, KidsPeace argues that Ms. Garbacik could not have had any notice that she would be subject to suit by Plaintiff in her individual capacity.

"The requirement that a plaintiff must exhaust all administrative remedies before seeking judicial relief is a well excepted tenet of administrative law. . . .The administrative prerequisites to filing employment discrimination claims under the ADA are no exception." DuBose v. District 1199c, Nat'l Union of Hosp. & Health Care Employees, 105 F. Supp. 2d 403, 410 (E.D. Pa. 2000) (citations omitted).  KidsPeace accurately states that Ms. Garbacik was never actually named as a respondent before either the EEOC or the PHRC, and that "the filing of a charge before the EEOC serves to notify the charged party of the alleged violation and also bring the party before the EEOC to provide an avenue for voluntary compliance without resort to litigation." Fuchilla v. Prockop, 682 F. Supp. 247, 256 (D.N.J. 1987) (citing Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977)), aff'd on appeal after remand, 629 F.2d 248 (1980), cert. granted, judgment vacated and case remanded on other grounds, 451 U.S. 935 (1981).  In response, Ms. Lightcap-Steele hastens to argue that "this court recognizes an exception when the unnamed party received notice and when there is a shared commonality of interest with the named party." Schafer v. Board of Public Educ. of School Dist., 903 F.2d 243, 252 (3d Cir. 1990) (citing Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980), vacated on other grounds, 451 U.S. 935 (1981).[5]

---

[5]    The court in Dixon v. Philadelphia Hous. Auth., 43 F. Supp. 2d 543, 546 (E.D. Pa. 1999), explained that "[t]his articulation of the exception is a shorthand version of the four-part test stated in Glus v. G.C. Murphy Co., 629 F.2d 248 (3d Cir. 1980), vacated on other grounds, 451

However, in a case with facts functionally similar to this case, a plaintiff named a

corporate entity and other individuals in the EEOC charge, but did not name one particular

defendant who was the owner of the corporate defendant.  The court dismissed the PHRA claims

against that defendant in his individual capacity.  <u>McInerney v. Moyer Lumber & Hardware,</u>

<u>Inc.</u>, 244 F. Supp. 2d 393, 399 (E.D. Pa. 2002).  The court did find that the owner had notice that

his company was under investigation for discriminatory conduct and, therefore, recognized that

he may be subject to suit in his official capacity as owner of the business.  <u>Id.</u>  "However," the

court continued, "there is nothing in the administrative complaints to suggest that [the plaintiff]

sought to charge [the defendant] in his *individual* capacity."  <u>Id.</u>  The court further held that

unlike other defendants in the case, the owner was "not named anywhere in the administrative

complaints, and there are no allegations therein that his personal conduct contravened the law."

<u>Id.</u>  <u>See also</u> <u>Catagnus v. Aramark Corp.</u>, 235 F. Supp. 2d 413, 418 (E.D. Pa. 2002).  <u>But see</u>

<u>Diep v. Southwark Metal Mfg. Co.</u>, No. 00-6136, 2001 U.S. Dist. LEXIS 2953, * 13-14 (E.D.

Pa. Mar. 19, 2001) (The court found defendant not named in the EEOC charge was on notice of

---

U.S. 935 (1981)."  In <u>Glus</u>, the court held that to determine whether commonality of interests
exists, a court must examine four factors:

> (1) whether the role of the unnamed party could through reasonable effort by the
> complainant be ascertained at the time of the filing of the EEOC complaint; (2)
> whether, under the circumstances, the interests of a named [party] are so similar
> [to] the unnamed party that for purposes of obtaining voluntary conciliation and
> compliance it would be unnecessary to include the unnamed party in the EEOC
> proceedings; (3) whether its absence from the EEOC proceedings resulted in
> actual prejudice to the interests of the unnamed party; (4) whether the unnamed
> party has in some way represented to the complainant that its relationship with
> the complainant is to be through the named party.

<u>Glus</u>, at 251.

the filing of the administrative complaint and the charges therein based on his attendance to the

fact-finding conference conducted by the Philadelphia Commission on Human Relations and "as

the human resources manager for [defendant corporation], [individual defendant] had a

commonality of interest with [defendant corporation] with respect to plaintiff's termination.").[6]

In the written submissions to this Court, Plaintiff relies on the "scope of the

investigation"[7] argument which applies more readily to charges stemming from <u>acts</u> not included

in the EEOC charge as opposed to <u>defendants</u> not named in the EEOC charge.  However, at oral

argument in this dispute, counsel shifted to the seemingly more applicable argument that there

was an identity of interests under <u>Schafer</u> between Ms. Garbacik and her employer, and that Ms.

Garbacik had notice because she was the one who actually terminated Ms. Lightcap-Steele.  The

Court does not agree with Plaintiff's labored argument, especially once undertaking the analysis

of the closely similar facts in <u>McInerney</u> which suggest that under the notice and identity of

interest test,[8] the claim against Ms. Garbacik ought to be dismissed.  Just like the individual

---

[6]   Ms. Lightcap-Steele did in fact assert in her EEOC filings that the "Human Resources Department felt I was abusing the system and [was] unhappy with my prior leave."  However, while the EEOC file indicates Ms. Garbacik was aware generally of the EEOC charge, this Court has not found any indication that Ms. Garbacik was put on notice of any charge against her in her individual capacity.

[7]   "Courts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . . "  <u>Stapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394, 399 (3d Cir. 1976) (citations omitted).

[8]   KidsPeace argues that courts in this circuit have held that this exception applies only to plaintiffs who are not represented by counsel at the time that the administrative complaint was filed.  <u>Christaldi-Smith v. JDJ, Inc.</u>, 367 F. Supp. 2d 756, 764 (E.D. Pa. 2005); <u>See, e.g.</u>, <u>Cronin v. Martindale Andres & Co.</u>, 159 F. Supp. 2d 1, 9 (E.D. Pa. 2001).   Plaintiff's counsel argued that these decisions should not be followed here because they were based on a New York federal court case that did not involve a state remedy.  Tr. at 8-9.  In this case, the Court need not determine the efficacy of either side's argument on this point because the Court concludes that,

defendant in <u>McInerney</u>, there was nothing in the administrative complaint here to suggest that Ms. Garbacik would be charged in her individual capacity.

While this Plaintiff identifies communications between herself and Ms. Garbacik concerning Ms. Lightcap-Steele's alleged disability, these communications alone do nothing to put Ms. Garbacik on notice of a potential suit against her in her individual capacity. Furthermore, unlike defendants McKinney, Taglang, and Zelko, Ms. Garbacik is not actually named anywhere in the EEOC charge.  Nor does the EEOC charge describe unlawful conduct <u>per se</u> by the "Human Relations Department" even if one were to equate Ms. Garbacik with the Department.  The paucity of references to the Human Relations Department in the EEOC charge is not inconsistent with the fact that the Amended Complaint makes very little reference to Ms. Garbacik and what reference there is is amenable to interpreting her role as a mere administrative functionary, all of which heightens the importance of the distinction as to the capacity in which someone may be pursued.  Consideration of other of the <u>Glus</u> factors also operate in favor of Ms. Garbacik's position here.  It seems entirely reasonable under the circumstances of the parties' relationships and dealings with each other that Ms. Garbacik's role, if any, could through reasonable effort by Ms. Lightcap-Steele have been ascertained by her at the time of her EEOC filings.  Second, Ms. Lightcap-Steele makes no presentation on the factor as to whether Ms. Garbacik's interests "are so similar" to those of any of the named parties in the EEOC proceedings that it should be considered unnecessary, for the purpose of obtaining voluntary conciliation, to have named Ms. Garbacik.  Third, there is likewise no information

whether Plaintiff was or was not represented when the administrative complaint was filed, the identity of interest exception does not apply here.

from Ms. Lightcap-Steele from which to ascertain whether Ms. Garbacik's formal absence from the EEOC matters resulted in actual prejudice to her (such as the loss of the opportunity to clear her name of allegations of wrongdoing before experiencing the arguable ignominy of being individually named in a public law suit).  Finally, Ms. Lightcap-Steele has not suggested that Ms. Garbacik has in some way represented to her that Ms. Garbacik's relationship with her is to be through one of the parties actually named in the EEOC complaint.

Therefore, the Court concludes that the Plaintiff failed to exhaust her administrative remedies in regard to Ms. Garbacik, and the motion to dismiss as to Ms. Garbacik will be granted.

### D.    Pleading a Claim Under the ADA[9]

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To establish a prima facie case under the ADA, a plaintiff must show that: (1) she has a disability, (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she was nonetheless terminated or otherwise prevented from performing the job.  Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).

### 1.    Disability

---

[9]    Because Pennsylvania courts generally apply the PHRA provisions on disability discrimination consistently with their federal statutory counterparts, this Court will consider the PHRA claims co-extensively with accompanying ADA claims.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

KidsPeace argues that Ms. Lightcap-Steele's medical condition and restrictions do not rise to the level of a "disability" within the meaning of the ADA because Ms. Lightcap-Steele's claim that her lifting and carrying restrictions constitute major life activities is not legally sustainable.  Ms. Lightcap-Steele responds by arguing that the allegations in her complaint are sufficient to allege a disability under <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 (2002), and further that KidsPeace has inaccurately characterized her as someone with a "only" a lifting restriction.

In support of her contention that she is disabled under the ADA, Ms. Lightcap-Steele alleged in her Amended Complaint:

> 83. At all times relevant herein, Lightcap-Steele was regarded as disabled by Defendants and/or had a record of a disability.

> 84. At all times relevant herein, Lightcap-Steele suffered from a condition that limits major life activities, including but not limited to lifting, carrying, pushing, pulling, manual tasks, and working.

> 85. Ms. Lightcap-Steele was able to perform all of the essential functions of the position of Aquatics Instructor with or without accommodation.

She further alleged that she suffered a non-work related accident on January 9, 2002 in which she sustained cervical disk herniation, "a serious medical condition which substantially restricts Plaintiff in several major life activities, including but not limited to lifting, carrying, taking care of herself and her child, manual tasks and working." ¶¶ 18, 35.

### a.      Actual Disability

Under the ADA, a person has a "disability" if she "(1) has a 'physical or mental impairment that substantially limits one or more of the major life activities of such

individual'; (2) has 'a record of such an impairment'; or (3) is 'regarded as having such

impairment.'" Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996) (citing 42

U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)).

Major life activities include "functions such as caring for one's self, performing

menial tasks, walking, seeing, hearing, speaking, breathing, learning and working."

Olson v. General Electric Aerospace, 101 F.3d 947, 952 (3d Cir. 1997).  Activities are

"substantially limit[ed]" when one is:

> (i) unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as comparable to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

Olson v. General Electric Aerospace, 101 F.3d 947, 952 (3d Cir. 1997); 29 C.F.R. § 1630.2(j)(1).

With regard to working, KidsPeace properly asserts that the inability to perform a single

particular job does not constitute a substantial limitation in the major life activity of working.

Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 200-01 (2002).  Rather, an

individual alleging disability discrimination must allege that they are unable to perform a broad

class of jobs.  Sutton v. United Airlines, Inc., 527 U.S. 471, 492 (1999).  Specifically, KidsPeace

relies on Ms. Lightcap-Steele's medical records to argue that her alleged impairments do not

constitute a significant limitation on one's ability to work or to perform any other major life

activity, because the impairment is a minor lifting restriction.

In response, Ms. Lightcap-Steele argues that where the claimed "major life activity" is

working, the relevant inquiry is "whether the particular impairment constitutes for the particular

person a significant barrier to employment." Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 784 (3d Cir. 1998) (quoting Webb v. Garelick Mfg. Co., 94 F.3d 484, 488 (8th Cir. 1996) (citations omitted)).  The Court must determine "whether the individual is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes *as compared to the average person having comparable training, skills and abilities*.'" Id. (quoting 29 C.F.R. § 1630.2(j)(3)(i) (emphasis added)).  Further, Ms. Lightcap-Steele understandably argues from the applicable regulations that when determining whether the person's major life activity of working has been substantially limited, the Court must consider the following factors:

> (a) The geographical area to which the individual has reasonable access;
>
> (b) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> (c) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).  Defense counsel ultimately acknowledged during oral argument on the motion that these factors "couldn't even be approached with the administrative record, because that will be something fact specific."  Tr. at 20.  Therefore, the Court likewise will not preclude the parties from proceeding to the more "fact specific" stage of litigation.

### b.    'Regarded As' Disabled

A person is 'regarded as' having a disability if the person:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir. 1999) (citing 29 C.F.R. § 1630.2).

At the oral argument on the pending motion, when defense counsel was asked how he responded to Ms. Lightcap-Steele's allegation that she was regarded as disabled, he responded ". . . legally, at this point, I really can't do much with that argument.  Factually, we'll talk about this later."  Tr. at 18.

Therefore, inasmuch as the KidsPeace itself has identified the presence of factual issues in dispute at this point in the litigation, it would be inappropriate for the Court to grant the motion to dismiss concerning the claims by Plaintiff involving violations of the ADA based on her alleged disability.  Of course, if appropriate, the Court would entertain a motion to "talk about this later" after discovery has run its course completely.

### 2.    Qualified Individual Under the ADA

KidsPeace argues that Ms. Lightcap-Steele's disability discrimination claim also fails as a matter of law because she cannot establish that she was a "qualified individual with a disability."  See Deane v. Pocono Medical Center, 142 F.3d 138, 142 (3d Cir. 1998).  A qualified individual with a disability is one "who with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

KidsPeace argues that the essential job functions alleged by Ms. Lightcap-Steele in her Amended Complaint are not really the essential job functions.  KidsPeace argues that courts have repeatedly held that an employer's determination of what constitutes an "essential function" is due significant deference because "it is not the function of the courts to micro-manage corporate practices."  Conneen v. MBNA Am. Bank, N.A., 182 F. Supp. 2d 370, 378 (D.Del. 2002), aff'd, 334 F.3d 318 (3d Cir. 2003); see also Deane v. Pocono Medical Center, 142 F.3d 138, 148 (3d Cir. 1998).

The Court shares the deferential approach, but whether or not a particular function is essential is a factual determination that must be made on a case-by-case basis based upon all relevant evidence.  Pocono Medical Center, 142 F.3d at 148 (citing 29 C.F.R. pt. 1630, app. § 1630.2(n)).  At this stage in the litigation, where all reasonable inferences must be drawn in favor of the plaintiff, Ms. Lightcap-Steele has alleged that she can perform the essential functions of her employment.  See ¶¶ 19, 36, 46, 85.  In response,  KidsPeace has pointed to the actual job descriptions to argue that Ms. Lightcap-Steele mis-characterized the essential functions of her position.  Even if the Court were to focus on the job description material offered by KidsPeace, the fact that Plaintiff alleges that accommodations were granted at one point, renders those descriptions less than definitive where all inferences must be taken in favor of the plaintiff.  ¶ 36.  While KidsPeace may well pursue these arguments later in a motion for summary judgment or at trial, when considering the pending motion to dismiss, it is the allegations in the Amended Complaint that must be the focus of the Court's evaluation rather

than the evidence offered by KidsPeace.  Ms. Lightcap-Steele has alleged sufficiently that she

was able to perform the essential functions of her job.[10]

### 3.       Disability Harassment

A claim for harassment based on disability, like one under Title VII, would require a showing that: 1) [plaintiff] is a qualified individual with a disability under the ADA; 2) she was subject to unwelcome harassment; 3) the harassment was based on her disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) that [defendant] knew or should have known of the harassment and failed to take prompt effective remedial action.

Walton v. Mental Health Ass'n, 168 F.3d 661, 667 (3d Cir. 1999) (assuming, without deciding,

that such a claim is legally cognizable under ADA) (citations omitted).

KidsPeace acknowledges that, although the Third Circuit Court of Appeals has never

specifically recognized a cause of action for harassment under the ADA, courts have analogized

harassment based on disability to hostile work environment claims under Title VII, 42 U.S.C. §

2000e et seq. See Rivera v. Domino's Pizza, 1996 U.S. Dist. LEXIS 1351, 10-11 (E.D. Pa. 1996).

Additionally, "[a]s with sexual harassment claims, courts are stern, and the threshold showing is

high." Shiflett v. G. E. Fanuc Automation Corp., 960 F. Supp. 1022, 1035 (W.D. Va. 1997).

---

[10]    The arguments by both parties concerning the reasonableness of the requested accommodations and the nature of the interactive exchange, if any, that occurred likewise are, in large part, fact intensive disputes.  When Ms. Lightcap-Steele's allegations are taken with all reasonable inferences in her favor, as required at the motion to dismiss stage, KidsPeace cannot establish that Ms. Lightcap-Steele failed to state a claim against KidsPeace inasmuch as one can reasonably infer from the Amended Complaint that her requested accommodations could be reasonable and that any interactive process engaged in was not in good faith.  Defendant admitted as much concerning the reasonableness of the requested accommodations stating ". . . it will require a factual record to as to what she was really requesting."  Tr. at 24.

KidsPeace argues that Ms. Lightcap-Steele's harassment claim should be dismissed because Ms. Lightcap-Steele has failed to allege sufficiently that Defendants created a hostile or abusive work environment within the meaning of the ADA or, alternatively, that the alleged harassment was not so severe or pervasive as to create the requisite hostile work environment. KidsPeace argues Ms. Lightcap-Steele failed to allege that the conduct which purportedly constituted disability harassment was severe or pervasive, as would be required to state an actionable claim because Ms. Lightcap-Steele only alleges that Defendants created a hostile working environment by:

(a) Requiring Ms. Lightcap-Steele to herself perform cleaning and maintenance duties that were the responsibility of staff under her.

(b) Giving her classes to a recreational counselor, who had no teaching or aquatic experience.

(c) Modifying her hours to times when there are no classes and virtually no aquatic activities, including the 12-8 pm shift on Fridays. This imposed a tremendous hardship on her as a new mother. On the other hand, an unmarried employee with no children was granted liberal time off to spend with her boyfriend.

(d) Placing her under weekly supervision.

(e) Removing many of her supervisory responsibilities.

(f) Requiring her to obtain additional certifications.

(g) Disciplining her for being late to work (when her daughter became ill), even though Ms. Lightcap-Steele used available vacation time. Other employees' lateness are routinely overlooked, and they are not required to document their lateness on their timesheets.

(h) Instituting a "vacation policy" to which only Ms. Lightcap-Steele was held.

(i) Issuing a warning on December 10, 2003, which was false and based upon rumor and gossip. After Ms. Lightcap-Steele responded in writing, McKinney held up her response and laughed.

¶ 55.

Rather than actually identifying any legal insufficiency in the pleading as drafted, KidsPeace instead challenges the factual basis of the allegations.  KidsPeace asserts that during the time period these events occurred, Ms. Lightcap-Steele was working without medical restrictions pursuant to the orders of her own physician, which Ms. Lightcap-Steele alleged she was forced to do to against the doctor's medical advice in order to return to work.  ¶ 51.  KidsPeace also claims that none of the aforementioned complaints stated by Ms. Lightcap-Steele are remotely related to her purported disability.  Therefore, KidsPeace argues that these allegations are legally insufficient to establish that the claimed harassment was severe and pervasive enough to permit Ms. Lightcap-Steele to state a legally cognizable claim for disability harassment under the ADA.

However, the actual Amended Complaint which is the basis of the inquiry that the Court must undertake at the motion to dismiss stage also states in paragraph 91:  "By its actions and inactions through its agents, servants and representatives, KidsPeace created, maintained and permitted to be maintained a work environment which was hostile to persons such as Plaintiff who have or are perceived as having a disability."

Though the trier of fact ultimately may be convinced that the alleged harassment was neither on account of Ms. Lightcap-Steel's disability, nor was severe and pervasive such that it altered the terms and conditions of her employment, those questions are more appropriately resolved upon consideration of a complete record.  Inasmuch as this dispute is at the pre-discovery motion to dismiss stage, when the allegations in the Amended Complaint, especially ¶

23

55, are taken as true with all reasonable inferences in favor of Ms. Lightcap-Steele, the Court concludes that it cannot dismiss her claim for hostile work environment harassment under the ADA.

### 4.   Retaliation

KidsPeace likewise argues that the allegations of the Amended Complaint that Ms. Lightcap-Steele's retaliation claims are based solely upon the protected activity of requesting an accommodation and that such allegations are not sufficient to articulate a retaliation claim.  Ms. Lightcap-Steele responds by identifying specific paragraphs of the Amended Complaint which identify retaliation, or identify actions from which one could reasonably infer retaliation against her for taking part in a protected activity under the ADA.

"[I]t is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA."  Shellenberger v. Summit Bancorp, 318 F.3d 183, 188 (3d Cir. 2003).  "In order to establish a prima facie case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.  Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (applying prima facie case to ADA) (citations omitted).

"The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC, and we have already explained that the ADA protects one who engages in the latter activity without regard to whether the complainant is 'disabled.'"  Shellenberger, 318 F.3d at 191.  Furthermore, Ms. Lightcap-Steele also argues

that the Third Circuit Court of Appeals suggests that complaints to the employer can satisfy the protected activity element of a retaliation claim.  <u>Barber v. CSX Distribution Services</u>, 68 F.3d 694, 702 (3d Cir. 1995).

In the Amended Compliant, with regard to KidsPeaces's purported retaliatory conduct, Ms. Lightcap-Steele alleges that KidsPeace initially took no action to address her requests for accommodation.  ¶ 74.  Then, Ms. Lightcap-Steele also asserts in her Amended Complaint that in retaliation for the accommodation request Mr. McKinney began immediately to alter Ms. Lightcap-Steele's duties to require tasks that he knew she could not perform, and to remove duties that she could, including cleaning and maintenance duties that her subordinates had previously done, reassigning her teaching responsibilities to non-pool staff, removing supervisory responsibilities, as well as disciplining Ms. Lightcap-Steele for taking vacation time to care for her child and issuing a written warning to Ms. Lightcap-Steele on December 10, 2003.  ¶ 55.  Next, Ms. Lightcap Steele argues Mr. McKinney continued his retaliatory action when he gave her the first negative evaluation she had ever been given on January 5, 2004.  ¶ 56.

Ms. Lightcap-Steele argues that a subsequent protected activity occurred when she filed a Charge of Discrimination, on February 17, 2004.  ¶ 62.  She was ultimately terminated from KidsPeace on July 2, 2004.  ¶ 69.

Again, KidsPeace resorts to a fact-based argument to state that Ms. Lightcap-Steele obtained a note from her doctor clearing her to return to full duty without accommodation.  Ms. Lightcap-Steele counters that this was necessitated by KidsPeace's refusal to reinstate her prior accommodations.  ¶ 51.  KidsPeace also resorts to trying to refute Ms. Lightcap-Steele's factual

allegations by arguing that it initiated an interactive process to determine if a reasonable

accommodation could be found for Ms. Lightcap-Steele and, after two (2) months of interaction,

it was determined that Ms. Lightcap-Steele's restrictions could not be accommodated, especially

with regard to water rescues.

KidsPeace correctly states that with regard to a termination, the Third Circuit Court of

Appeals has held that the timing of the alleged retaliatory action must be "unusually suggestive"

of retaliatory motive before a causal link will be inferred.  Krouse v. American Sterilizer Co.,

126 F.3d 494, 503 (3d Cir. 1997) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302

(3d Cir. 1997).  Ms. Lightcap-Steele responds by also correctly arguing that she may make out

an inference of a causal link by demonstrating the temporal proximity between the protected

activity and the adverse employment action.  See, e.g., Woodson v. Scott Paper Co., 109 F.3d

913, 920 (3d Cir. 1997) (stating that "temporal proximity between the protected activity and the

termination is sufficient to establish a causal link").  Farrell v. Planters Lifesavers Co., 206 F.3d

271, 280 (3d Cir. 2000) ("timing and ongoing antagonism have often been the basis for the

casual link between protected conduct and the adverse employment action . . .").

KidsPeace contends that the passage of nearly one year between Ms. Lightcap-Steele's

first request for an accommodation and her termination is far too attenuated to infer a causal link.

While timing of the termination alone may not allow for inferring a causal link between

protected action and retaliatory conduct, claims of ongoing antagonism can be reasonably

inferred from her Amended Complaint.  Therefore, Ms. Lightcap-Steele has succeeded in stating

a claim for retaliation under the liberal pleading standards of the Federal Rules of Civil

Procedure, when her allegations concerning KidsPeace's actions from the time of her initial

request for accommodation to her ultimate termination are viewed with all reasonable inferences

in her favor.  Again, while ultimately there may be no causal connection between the purported protective activity and any subsequent action by KidsPeace, it would be more appropriate to decide such questions on the basis of a fully developed record.

## III.    CONCLUSION

For the reasons discussed above, the Court denies in part and grants in part the defendants' Motion to Dismiss.  An appropriate Order consistent with this Memorandum follows.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LIGHTCAP-STEELE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KIDSPEACE HOSPITAL, INC., | : | |
| et al | : | |
| Defendants. | : | NO. 05-02578 |

**<u>ORDER</u>**

Pratter, Gene E.K., J.                                                                April 27, 2006

        AND NOW, this 27th day of April, 2006, upon consideration of defendants' Motion to

Dismiss (Docket No. 7), and the response and reply thereto (Docket No. 8 and 9), it is hereby

ORDERED that the Motion to Dismiss IS GRANTED in part and DENIED in part.

    1.    Counts III, IV, V, VI and IX in their entirety, and Counts VII, VIII, and X so
          much as those claims relate to sexual discrimination, sexual harassment, but not
          as to disability-based claims, shall be dismissed by the parties' mutual agreement.

    2.    Count VIII shall be dismissed as to Ms. Garbacik.

    3.    All other aspects of the Motion are denied.

    4.    Defendants each shall file and serve their answers to Ms. Lightcap-Steele's
          Amended Complaint within twenty (20) days of the date of this Order.


                                        BY THE COURT:


                                        <u>S/Gene E.K. Pratter</u>
                                        GENE E.K. PRATTER
                                        UNITED STATES DISTRICT JUDGE